**WHITE BEAR ROD AND GUN CLUB, Petitioner, Relator,**

v.

**CITY OF HUGO, Respondent.**

No. C3–85–805.

Supreme Court of Minnesota.

June 20, 1986.

---

Thomas J. Barrett, St. Paul, for relator.

Charles A. Johnson, Hugo City Atty., Hugo, for respondent.

SIMONETT, Justice.

We reverse the court of appeals' ruling that a city council lacks jurisdiction to entertain an application to award a special use permit for the operation of a gun club because of the existence of a district court injunction prohibiting the gun club's operation. We remand to the city council to prepare adequate findings of fact for its decision denying the requested amendment.

In May 1974, respondent City of Hugo issued to petitioner-relator White Bear Rod and Gun Club a special use permit to operate a gun club about 1 ½ miles east of the built-up portion of the city. The permit included a requirement that the noise level from the club's operation, which included skeet and trap shooting, not exceed 40 decibels at any property line. Thereafter, in April 1976, in a separate proceeding brought by two environmental groups against the gun club, the Washington County District Court found that the club's

operation would violate the Minnesota Environmental Rights Act and permanently enjoined the gun club's operation. On appeal, we affirmed the district court's decision, *Minnesota Public Interest Research Group v. White Bear Rod & Gun Club*, 257 N.W.2d 762 (Minn.1977), adding, however, that our affirmance was not intended to preclude the gun club from attempting remedial action which might bring its operation into compliance with the environmental rights act. *Id.* at 783.

Since then the gun club has struggled without much success to make its operation palatable to the district court, the city council, and the neighboring public. In May 1980, the district court denied the gun club's application to remove the permanent injunction because, it said, the shooting would still adversely affect the quietude of the area.[1] For over a decade now, while the gun club has used its indoor firing range, it has never been able to do outdoor skeet and trap shooting because, apparently, it has never been able to meet the 40-decibel noise limitation.

In late 1984 the gun club tried again to raise the noise level limitation, resulting in this present appeal. It applied to the Hugo City Council to amend the special use permit to allow shooting noise at a "reasonable level," which it proposed should be 55 decibels. The gun club produced evidence that the background noise level on the club's property was already 45.8 decibels, and that to impose a 40-decibel level on the club's operation set an impossible, hence unreasonable, standard. On March 6, 1985, following two public hearings before its planning commission, the city council denied the requested permit amendment. The gun club sought judicial review by certiorari directly to the court of appeals. The court dismissed the appeal, reasoning

that because of the outstanding injunction against the gun club, "the City of Hugo had no jurisdiction to consider the Club's application for an amendment to its special use permit." *White Bear Rod & Gun Club v. City of Hugo*, 377 N.W.2d 49, 53 (Minn.Ct.App.1985).

We granted the gun club's petition for further review to clarify procedures where two forums—a municipal body and a district court—are both exercising jurisdiction over aspects of land use of a particular area.

I.

The City of Hugo raises a threshold issue, namely, whether certiorari is the proper procedure for judicial review of a city council's denial of an amendment to a special use permit. We conclude certiorari lies, but only for a very narrow issue.

■ Certiorari is appropriate to review quasi-judicial proceedings only where there is no appeal and no other adequate remedy. *Plunkett v. First National Bank of Austin*, 262 Minn. 231, 233 n. 2, 115 N.W.2d 235, 237 n. 2 (1962). While city council decisions on special use permits are quasi-judicial, *see Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416 (Minn.1981), the City of Hugo argues certiorari is inappropriate here because Minn.Stat. § 462.361, subd. 1(1984), provides an adequate remedy in district court:

> Any person aggrieved by an ordinance, rule, regulation, decision or order of a governing body or board of adjustments and appeals acting pursuant to sections 462.351 to 462.364 may have such * * * decision or order reviewed by an appropriate remedy in the district court * * *.

■ Judicial review of special use permits comes under this quoted language.

---

1. This district court proceeding involved an 8-day trial replete with much expert acoustical testimony. The district court found that remedial measures taken by the club would satisfy earlier concerns about potential lead poisoning and that there would be no material threat to wildlife habitat, but it found the impulsive noise level from outdoor shooting was still too high.

The district court gave substantial weight to the 40-decibel level limitation set out in the City of Hugo's special use permit, observing this standard was designed by the city "to prevent degradation of the existing environmental resource of quietude * * *." This court affirmed the district court's decision without a written opinion.

The statute is silent on what is an "appropriate remedy," but in *Honn v. City of Coon Rapids, supra,* we made clear that certiorari ordinarily is no longer appropriate in reviewing any zoning matter, legislative or quasi-judicial. *Id.* at 416. We said a declaratory judgment or injunction action is generally more appropriate, or sometimes mandamus, although adding "there may be a quasi-judicial proceeding presenting a legal question to which certiorari still lends itself." *Id.* citing *Ram Development Co. v. Shaw,* 309 Minn. 139, 244 N.W.2d 110 (1976) (involving an issue of parliamentary procedure). It seems to us we have here, as in *Ram,* a narrow legal procedural question which lends itself to certiorari, namely: Did the Hugo City Council set out its decision in proper legal form for judicial review?

■ But if certiorari lies, should it issue from the district court or the court of appeals? The court of appeals relied on Minn.Stat. § 480A.06, subd. 3 (Supp.1985) to conclude that a "petition for a writ of certiorari is now properly taken to [the court of appeals] rather than the district court." 377 N.W.2d at 52. This section says the court of appeals "shall have jurisdiction to issue writs of certiorari to all agencies, public corporations and public officials * * *." Respondent City of Hugo argues that while the court of appeals has "jurisdictional capacity" regarding certiorari, such review is more efficiently conducted in the district court. We agree. Section

480A.06, subd. 3, does not purport to grant exclusive jurisdiction for writs of certiorari to the court of appeals; section 462.361, subd. 1, makes clear that the district court has at least [2] concurrent certiorari jurisdiction. While we conclude that henceforth an aggrieved person should seek relief first in the district court, judicial economy dictates in this instance that we reach the merits of the gun club's appeal.

## II.

■ We hold, as a matter of law, the Hugo City Council's decision denying the special use permit amendment lacks any findings of fact or other explanation of its decision adequate for any judicial review.

In denying the gun club's application, the city council cryptically listed nine "reasons" as set out below.[3] These so-called reasons are nothing more than a list of the council's sources of information and tell a reviewing court nothing about how the council may have evaluated or used this information.[4] While the city council was not required to prepare formal findings of fact, it was, "at a minimum," required to "have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion." *Honn,* 313 N.W.2d at 416.

We remand to the Hugo City Council to prepare appropriate findings for its decision on the gun club's application for an amendment to its special use permit.[5] Af-

2. It could be argued, although neither party has done so, that section 462.361, subd. 1, grants the district court exclusive jurisdiction over writs of certiorari in the area of land use planning. *See* Minn.Stat. § 462.364 (1984), providing that in cases of municipal planning and zoning "[i]nconsistent special laws and general laws of special application are superseded by sections 462.351 to 462.364 to the extent of inconsistency."

3. The "reasons" for the denial, as set out in the transcribed record, were: "Item 1, information in this letter [a letter by a council member to the council]; Item 2, the new petition with over 250 names against the Gun Club; Item 3, past court cases; Item 4, information from other governmental agencies; Item 5, the state statutes; Item 6, the Hugo's Comprehensive Plan;

Item 7, all materials submitted at the February 6th, 1985 public hearing; [Item 8,] Hugo City Code Book; and No. 9, the information on file at the Hugo City Hall."

4. The city council had before it the impressionistic testimony of the gun club's neighbors plus the acoustical test results of the club's experts. Here, as in prior proceedings, the validity of the test results was disputed because of the times, places, and meteorological conditions in which they were conducted. The gun club also offered to curtail the days and the hours it would be shooting. We are left in the dark as to what the city council made of all this evidence.

5. In *Corwine v. Crow Wing County,* 309 Minn. 345, 352, 244 N.W.2d 482, 486 (1976), we said, "If the decision-making body does not state rea-

ter it has done so, the gun club should then, if it decides to seek judicial review, bring a declaratory judgment action in district court.

### III.

■ Implicit in the remand is a recognition that the Hugo City Council has jurisdiction to entertain the application for the permit amendment. We so hold. To the extent the court of appeals has ruled otherwise, we reverse.

There are two forums exercising jurisdiction over how the gun club may use its land. The Hugo City Council's jurisdiction arises under its zoning ordinance and its authority to issue special use permits. The district court's jurisdiction has been invoked by private citizens who sought and successfully obtained a permanent injunction prohibiting a use of the land that would be in violation of the Minnesota Environmental Rights Act.

To some extent, the jurisdiction of the two forums overlaps, but neither forum excludes the other.[6] Each acts within its own appropriate sphere and there is no conflict. Simply put, for the gun club to conduct outdoor shooting it must be in compliance with the Hugo zoning ordinance

and the special use permit issued pursuant thereto and also be in compliance with the requirements of the Minnesota Environmental Rights Act.

The two forums have similar though different approaches to the land use issues involved. The city council applies the criteria set out in its ordinance having in mind, generally, the welfare of the community.[7] On appeal, the reviewing court reviews the record to determine if the decision is reasonable and based on legally sufficient reasons with a proper factual basis. *C.R. Investments, Inc. v. Village of Shoreview*, 304 N.W.2d 320, 325 (Minn.1981); *see also White Bear Docking and Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174, 176 (Minn.1982) (council has wide discretion). On the other hand, the district court, applying the criteria of the environmental rights act, considers whether the gun club's use of the land will pollute or impair quietude, whether there are feasible alternatives, and whether the gun club's activity is consistent with and reasonably required for promotion of public health, safety and welfare in light of the state's paramount concern for the protection of its natural resources. Minn.Stat. § 116B.01 (1984). The district court makes findings of fact,

sons contemporaneously with its action, its decision will be prima facie arbitrary, and it will bear the burden of persuading the reviewing court that the facts and circumstances before it gave rise to legally sufficient reasons for denial or revocation." In the posture of this case, however, even if we could conduct on certiorari a review on the merits, we would not have even noncontemporaneous findings to review. We believe the only course of action is to remand to the city council.

6. In *Minnesota Public Interest Research Group v. White Bear Rod & Gun Club*, 257 N.W.2d 762, 783 (Minn.1977), this court said, "[T]he city of Hugo has no authority to issue a permit or grant a variance which allows pollution, impairment, or destruction of the environment within the meaning of c. 116B." The court of appeals relied on this language to hold that the application for a permit amendment was premature, that the city had no jurisdiction to consider the application, and that the gun club should have returned to district court.

Our quoted language, however, read in context, meant only that any permit issued for a

noise level in violation of the Minnesota Environmental Rights Act would, by itself, be insufficient to allow the gun club's outdoor shooting so long as the shooting was still in violation of the Minnesota Environmental Rights Act. Nothing in the opinion addresses the city council's jurisdiction to issue special use permits. Indeed, the 40-decibel condition in the special use permit was not at issue in the district court action, which instead involved different although related issues and different parties.

7. The city ordinance requires the council to consider:

[T]he advice and recommendations of the Planning Commission if a report is filed, and the effect of the proposed use upon the health, safety, morals, and general welfare of occupants of surrounding lands, existing and anticipated traffic conditions * * *, the effect on values of property and scenic views in the surrounding area, and the effect of the proposed use on the Comprehensive Municipal Plan."

Hugo City Code, *Zoning* § 320–7, subd. c.

which on appellate review will not be disturbed unless clearly erroneous.

Conceivably, there may be situations where a landowner seeking a special use permit may be able to meet the criteria of one forum but not the other, but, as stated, the landowner must pass muster in both forums. In this case, the landowner has been unsuccessful in obtaining a feasible special use permit not just once before both the city council and the district court, but twice.

If the gun club seeks review of the city council's decision after remand by bringing a declaratory judgment action in district court, we suggest the gun club, assuming it has new evidence since it was last in district court 6 years ago, also bring an action to modify the district court's injunction on the requirements for quietude. Both proceedings could be consolidated for trial in district court. All interested parties would then be in court and any evidence need be given only once. The district court could coordinate the two proceedings and perhaps get this matter resolved once and for all.

Reversed and remanded.

WAHL, J., concurs specially.

WAHL, Justice (concurring specially).

I agree that it is useful for this court to indicate the pathway through the two forums exercising jurisdiction over how the plaintiff gun club may use its land. I am concerned, however, that in the course of this continuing saga, the gun club may be encouraged to pursue judicial action if only in the hope that at some point the system will equate persistence with a right to be granted the requested variance. In my view it is entirely possible, under the facts and circumstances of this case, for the 40-decibel condition to be found reasonable, even though that condition makes use of the permit impossible. There is evidence in the record that noise pollution can have potentially serious adverse health effects, that noise can cause annoyance and irritation regardless of the decibel level, and that loud noise from the club's operation would hurt property values. All of this evidence is relevant to the criteria set forth in the city's ordinance regarding the granting of special use permits. The legislature has expressly left the regulation of gun clubs to local authorities.[1] Furthermore, it must again be noted, as we noted in *Minnesota Public Interest Research Group v. White Bear Rod & Gun Club*, 257 N.W.2d 762, 765–766 (Minn.1977), that the gun club took the permit and constructed buildings on the site knowing it could not comply with the 40-decibel limitation.[2]

---

1. No standards adopted by any state agency for limiting levels of noise * * * which may occur in the outdoor atmosphere shall apply to * * * skeet, trap or shooting sports clubs * * *. Nothing herein shall prohibit a local unit of government or a public corporation with the power to makes rules for the government of its real property from regulating the location and operation of skeet, trap or shooting sports clubs * * *.
Minn.Stat. § 116.07, subd. 2a (1984). The Pollution Control Agency (PCA) has no authority to regulate noise emissions from gun clubs nor do the noise emission standards that have been developed by the PCA, which were used by the club to arrive at its 55-decibel proposal, apply to impulsive noise, such as that made by a shotgun. Minn. Rules § 7010.0400 (1985).

2. We said in *White Bear Rod and Gun Club:*
The evidence clearly shows that at no time since the Gun Club began operation has the decibel limit been within the 40-dba limitation of the permit. Further, Alfonso Perez, a noise pollution expert, testified that he informed the Gun Club applicants at the time of the hearing before the Hugo City Council that there was no possibility that they could comply with the decibel limitation contained in the permit.
257 N.W.2d at 765–766.